FILED

2020 Jul-07  PM 08:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL C. THREATT,** | ) | |
| | ) | **Civil Action No.** |
| **Plaintiff,** | ) | |
| | ) | **20-CV-00096-ACA** |
| **v.** | ) | |
| | ) | |
| **SYLACAUGA HOUSING** | ) | |
| **AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFF/COUNTERCLAIM DEFENDANT
### MICHAEL C. THREATT'S ANSWER

Plaintiff/Counterclaim Defendant Michael Threatt ("Threatt") responds to the Counterclaim

of Defendant/Counterclaim Plaintiff Sylacauga Housing Authority ("SHA") as follows:

Each allegation of the Counterclaim not specifically admitted is denied and strict proof of

the same is demanded.  No response is required to the allegations contained in the Introduction as

they consist of unproven allegations.  To the extent a response is required, and to the extent that the

aforementioned paragraphs contain any allegations of wrongdoing by Threatt; Threatt denies same

in full and demands strict and absolute proof thereof.

### PARTIES

1.    Admitted.

2.    Admitted.

### JURISDICTION AND VENUE

3.    Admitted that 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 allow any court of the United

States, upon the filing of an appropriate pleading, the ability to declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could be

sought.  Denied, that a declaratory judgment is proper here.

    4.      Admitted.

    5.      Admitted.

    6.      Plaintiff/Counterclaim Defendant can neither admit nor deny the allegations contained in Paragraph 6 of Defendant/Counterclaim Plaintiff's Counterclaim as they are matters of statutory and/or case law interpretation and constitute legal conclusions. To the extent that a response is required, Plaintiff/Counterclaim Defendant denies same in full and demands strict and absolute proof thereof.

    7.      Plaintiff/Counterclaim Defendant can neither admit nor deny the allegations contained in Paragraph 7 of Defendant/Counterclaim Plaintiff's Counterclaim as they are matters of statutory and/or case law interpretation and constitute legal conclusions. To the extent that a response is required, Plaintiff/Counterclaim Defendant denies same in full and demands strict and absolute proof thereof.

    8.      Admitted.

## FACTS

    9.      Admitted.

    10.      Admitted.

    11.      Admitted.

    12.      Denied, extenuating circumstances related to racial bias called for the removal of said clause and Board unanimously agreed to new contract.

    13.      Admitted.

    14.      Admitted.

15.     Admitted.

16.     Admitted.

17.     Denied, extenuating circumstances related to racial bias called for the removal of said clause and Board unanimously agreed to new and better contract.

18.     Denied, extenuating circumstances related to racial bias called for the removal of said clause and Board unanimously agreed to new and better contract.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Denied, in Executive Session, the Plaintiff/Counterclaim Defendant informed the Board of Commissioners that his contract was about to expire and based on the climate of racial bias that affected his family, he was not going to move to the area and needed a new and better contract. Because of these agreed upon concerns, the Board unanimously agreed to new and better contract.

25.     Denied, in Executive Session, the Plaintiff/Counterclaim Defendant informed the Board of Commissioners that his contract was about to expire and based on the climate of racial bias that affected his family, he was not going to move to the area and needed a new and better contract. Because of these agreed upon concerns, the Board unanimously agreed to new and better contract.

26.     Denied.

27.     Admitted, the Plaintiff/Counterclaim Defendant informed the Board that he could not

continue working for the SHA under conditions harmful to his family, i.e. racial animus in the community at large.   Based on this exhibited animus the Plaintiff/Counterclaim Defendant demanded a new contract with language protective of himself and his family.  Additionally, former Board Commissioner, Priscilla Cleveland stated that the racism in the area is why she informed the Plaintiff/Counterclaim Defendant that he should only rent a home in the area before deciding to move to Sylacauga permanently.  Based on these recognized concerns, the Board of Commissioners unanimously voted to create a new contract.

28.     Denied, the Plaintiff/Counterclaim Defendant informed the Board that he could not continue working for the SHA under conditions harmful to his family, i.e. racial animus in the community at large.   Based on this exhibited animus the Plaintiff/Counterclaim Defendant demanded a new contract with language protective of himself and his family.  Additionally, former Board Commissioner, Priscilla Cleveland stated that the racism in the area is why she informed the Plaintiff/Counterclaim Defendant that he should only rent a home in the area before deciding to move to Sylacauga permanently.  Based on these recognized concerns, the Board of Commissioners unanimously voted to create a new contract.

29.     Denied.

30.     Denied.

31.     Admitted.

32.     Admitted.

33.     Denied, the Plaintiff/Counterclaim Defendant informed the Board that he could not continue working for the SHA under conditions harmful to his family, i.e. racial animus in the community at large.   Based on this exhibited animus the Plaintiff/Counterclaim Defendant

demanded a new contract with language protective of himself and his family. Additionally, former Board Commissioner, Priscilla Cleveland stated that the racism in the area is why she informed the Plaintiff/Counterclaim Defendant that he should only rent a home in the area before deciding to move to Sylacauga permanently. Based on these recognized concerns, the Board of Commissioners unanimously voted to create a new contract.

34.     Denied, the Plaintiff/Counterclaim Defendant informed the Board that he could not continue working for the SHA under conditions harmful to his family, i.e. racial animus in the community at large. Based on this exhibited animus the Plaintiff/Counterclaim Defendant demanded a new contract with language protective of himself and his family. Additionally, former Board Commissioner, Priscilla Cleveland stated that the racism in the area is why she informed the Plaintiff/Counterclaim Defendant that he should only rent a home in the area before deciding to move to Sylacauga permanently. Based on these recognized concerns, the Board of Commissioners unanimously voted to create a new contract.

35.     Denied, the Plaintiff/Counterclaim Defendant informed the Board that he could not continue working for the SHA under conditions harmful to his family, i.e. racial animus in the community at large. Based on this exhibited animus the Plaintiff/Counterclaim Defendant demanded a new contract with language protective of himself and his family. Additionally, former Board Commissioner, Priscilla Cleveland stated that the racism in the area is why she informed the Plaintiff/Counterclaim Defendant that he should only rent a home in the area before deciding to move to Sylacauga permanently. Based on these recognized concerns, the Board of Commissioners unanimously voted to create a new contract.

36.     Admitted.

37.     Denied.

38.     Denied.

39.     Admitted.

40.     Denied, the new contract was legally signed by the Vice Chairperson, Alma Jean Cook.  According to the SHA Bylaws, Article II Officers, Section 3, the Vice Chairperson shall perform the duties of the Chairperson in the absence or the incapacity of the Chairperson.

41.     Admitted, the new contract was legally signed by the Vice Chairperson, Alma Jean Cook.  According to the SHA Bylaws, Article II Officers, Section 3, the Vice Chairperson shall perform the duties of the Chairperson in the absence or the incapacity of the Chairperson. The following Board Commissioners were in attendance during the Executive Session: Alma Jean Cook, Priscilla Cleveland, and Former Board Chairperson, William "Bill" Roberts. The following Board Commissioners were on the phone during the Executive Session: Matthew Hubbard (left the meeting early) and Board Chairperson, Marvin Miller (was at the hospital to see about his mother). The Board of Commissioner unanimously voted to enter into a new contract and extend the Plaintiff/Counterclaim Defendant's term to five years, increase his salary, make him a vested employee, remove the language requiring he move to Sylacauga, make the contract match the bylaws, and clearly set out the Plaintiff/Counterclaim Defendant's Title/ Duties as the Chief Executive Officer.

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Admitted.

46.     Denied, the new contract was legally signed by the Vice Chairperson, Alma Jean Cook.  According to the SHA Bylaws, Article II Officers, Section 3, the Vice Chairperson shall perform the duties of the Chairperson in the absence or the incapacity of the Chairperson.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied, Alma Jean Cook polled the other commissioners regarding their thoughts on executing the contract.  Former Board Chairperson, William "Bill" Roberts made the comment if we do not make the decision to keep Michael [Plaintiff/Counterclaim Defendant], we are going to lose him to another housing authority.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

## COUNT I
## DECLARATORY JUDGMENT

58.     Plaintiff/Counterclaim Defendant incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Admitted.

64.     Admitted.

65.     Denied.  Paragraph 65 states conclusions of law to which no responsive pleading is required. The opinion referenced in Paragraph 65 is a writing that speaks for itself and any characterization thereof is denied. To the extent a responsive pleading is required, the allegations in Paragraph 65 are denied.

66.     Denied as stated.  The new contract was legally signed by the Vice Chairperson, Alma Jean Cook.  According to the SHA Bylaws, Article II Officers, Section 3, the Vice Chairperson shall perform the duties of the Chairperson in the absence or the incapacity of the Chairperson.

67.     Denied.  The new contract was legally signed by the Vice Chairperson, Alma Jean Cook.  According to the SHA Bylaws, Article II Officers, Section 3, the Vice Chairperson shall perform the duties of the Chairperson in the absence or the incapacity of the Chairperson.

68.     Denied.  The new contract was legally signed by the Vice Chairperson, Alma Jean Cook.  According to the SHA Bylaws, Article II Officers, Section 3, the Vice Chairperson shall perform the duties of the Chairperson in the absence or the incapacity of the Chairperson.

69.     Denied.  the new contract was legally signed by the Vice Chairperson, Alma Jean Cook. According to the SHA Bylaws, Article II Officers, Section 3, the Vice Chairperson shall perform the duties of the Chairperson in the absence or the incapacity of the Chairperson. The following Board Commissioners were in attendance during the Executive Session: Alma Jean Cook,

Priscilla Cleveland, and Former Board Chairperson, William "Bill" Roberts. The following Board Commissioners were on the phone during the Executive Session: Matthew Hubbard (left the meeting early) and Board Chairperson, Marvin Miller (was at the hospital to see about his mother). Former Board Chairperson, William "Bill" Roberts made the comment if we do not make the decision to keep Michael, we are going to lose him to another housing authority. Alma Jean Cook also asked the other commissioners, what did they want to do, either we want to keep Michael, or we don't, and we need to go ahead and vote. The Board of Commissioner unanimously voted to enter into the contract and extend the Plaintiff/Counterclaim Defendant's term five years, increase his salary, make him a vested employee, remove any language requiring him to move to Sylacauga , make the contract match the bylaws,  and clearly set out the Plaintiff/Counterclaim Defendant's Title/ Duties as the Chief Executive Officer.

70.     The Plaintiff/Counterclaim Defendant denies that Defendant/Counterclaim Plaintiff is entitled to any of the relief requested in the numbered Paragraph 70, including subparts (a) through (b), and respectfully requests that the Court dismiss the Counterclaim in its entirety and enter judgment in his favor and against Defendant/Counterclaim Plaintiff.

## COUNT II
## FRAUDULENT INDUCEMENT

71.     Plaintiff/Counterclaim Defendant  incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

72.     Plaintiff/Counterclaim Defendant  incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     The Plaintiff/Counterclaim Defendant denies that Defendant/Counterclaim Plaintiff is entitled to any of the relief requested in the numbered Paragraph 78, including subparts (a) through (d), and respectfully requests that the Court dismiss the Counterclaim in its entirety and enter judgment in his favor and against Defendant/Counterclaim Plaintiff.

**COUNT III**
**INADEQUATE CONSIDERATION**

79.     Plaintiff/Counterclaim Defendant  incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

80.     Plaintiff/Counterclaim Defendant  incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     The Plaintiff/Counterclaim Defendant denies that Defendant/Counterclaim Plaintiff is entitled to any of the relief requested in the numbered Paragraph 85, including subparts (a) through (d), and respectfully requests that the Court dismiss the Counterclaim in its entirety and enter judgment in his favor and against Defendant/Counterclaim Plaintiff.

## COUNT IV
## UNCONSCIONABILITY

86.     Plaintiff/Counterclaim Defendant  incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

87.     Plaintiff/Counterclaim Defendant  incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     The Plaintiff/Counterclaim Defendant denies that Defendant/Counterclaim Plaintiff is entitled to any of the relief requested in the numbered Paragraph 95, including subparts (a) through (d), and respectfully requests that the Court dismiss the Counterclaim in its entirety and enter judgment in his favor and against Defendant/Counterclaim Plaintiff.

## COUNT V
## MUTUAL MISTAKE

96.     Plaintiff/Counterclaim Defendant  incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

97.     Plaintiff/Counterclaim Defendant  incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    The Plaintiff/Counterclaim Defendant denies that Defendant/Counterclaim Plaintiff is entitled to any of the relief requested in the numbered Paragraph 103, including subparts (a) through (d), and respectfully requests that the Court dismiss the Counterclaim in its entirety and enter judgment in his favor and against Defendant/Counterclaim Plaintiff.

## COUNT VI
## COERCION/DURESS

104.    Plaintiff/Counterclaim Defendant  incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

105.    Plaintiff/Counterclaim Defendant incorporates by reference his answers to the preceding Paragraphs as if set forth at length herein.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.     The Plaintiff/Counterclaim Defendant denies that Defendant/Counterclaim Plaintiff is entitled to any of the relief requested in the numbered Paragraph 113, including subparts (a) through (e), and respectfully requests that the Court dismiss the Counterclaim in its entirety and enter judgment in his favor and against Defendant/Counterclaim Plaintiff.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

SHA's claims are barred in whole or in part by the doctrine of estoppel.

### SECOND AFFIRMATIVE DEFENSE

SHA's claims are barred in whole or in part by the doctrine of unjust enrichment.

### THIRD AFFIRMATIVE DEFENSE

SHA failed to state causes of action for declaratory relief, fraudulent inducement, inadequate consideration, unconscionability, mutual mistake, and/or coercion/duress.

### FOURTH AFFIRMATIVE DEFENSE

SHA failed to state a cause of action for injunctive relief.

### FIFTH AFFIRMATIVE DEFENSE

SHA failed to mitigate its alleged damages.

### SIXTH AFFIRMATIVE DEFENSE

SHA waived any rights or arguments it may have or had in support of its contention that the contract duly executed by Alma Jean Cook was in any way improper.

### SEVENTH AFFIRMATIVE DEFENSE

The applicable statute of limitations expired prior to the institution of this action and therefore this case should be dismissed with prejudice.

## EIGHTH AFFIRMATIVE DEFENSE

Laches applies and acts to bar the institution of this action, and therefore the claims of SHA should be dismissed with prejudice.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff/Counterclaim Defendant did not misrepresent any material fact.

## TENTH AFFIRMATIVE DEFENSE

If Plaintiff/Counterclaim Defendant made any misrepresentation, he did not know the representation was not true.

## ELEVENTH AFFIRMATIVE DEFENSE

The Defendant/Counterclaim Plaintiff did not reasonably rely on any representations made by the Plaintiff/Counterclaim Defendant.

## TWELFTH AFFIRMATIVE DEFENSE

Defendant/Counterclaim Plaintiff cannot recover on any equitable claims because it has "unclean hands."

## THIRTEENTH AFFIRMATIVE DEFENSE

Even if Defendant/Counterclaim Plaintiff's allegations are true, it did not suffer any damages (economic loss).

The Plaintiff/Counterclaim Defendant reserves the right to amend this list of affirmative defenses as this case progresses through discovery, trial, and/or appeal.

**THREATT DEMANDS A TRIAL BY JURY
FOR ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

/s/ Roderick T. Cooks
Richard A. Rice
Roderick T. Cooks
Attorneys for the Plaintiff/Counterclaim Defendant

**OF COUNSEL:**
WINSTON COOKS, LLC
505 20th Street North
Suite#815
Birmingham, AL 35203
(205) 502-0970 telephone
(205) 278-5876 facsimile
email: rcooks@winstoncooks.com

The Rice Firm, LLC
www.thericefirmllc.com
420 20th Street North-Suite 2200
Birmingham, Alabama 35203
Office: 205.618.8733 ext. 101
Mobile: 256.529.0462
Fax: 888.391.7193

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that I have served a copy of the foregoing document on all persons listed below via the Court's CM/ECF filing system:

Brandi B. Frederick
Attorney for Defendants Sylacauga Housing Authority,
Patrick Lozito, Matt Hubbard, James Adams,
and Phillip Morris
Austill Lewis Pipkin & Maddox, P.C.
600 Century Park South, Suite 100
Birmingham, AL  35226
bfrederick@maplaw.com
(205) 870-3767 phone
(205) 870-3768 fax

Barry V. Frederick
Attorney For Defendant Alma Jean Cook
The Frederick Firm
5409 Trace Ridge Lane
Birmingham, Alabama 35244
Email: barry@frederickfirm.net
Phone: (205) 739-0043
Fax: (205) 739-0044

C. David Stubbs
Attorney For Defendant Mayor Jim Heigl
OF COUNSEL:
Stubbs, Sills & Frye P.C.
1724 South Quintard Avenue
Anniston, AL 36202
Phone: (205) 835-5050
david-ssf@cableone.net

   Done this the **7**th day of **July, 2020.**

          /s/Roderick T. Cooks
          Of Counsel