FILED

2020 Nov-13  PM 07:17
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

**MICHAEL C. THREATT,**               )
                                      )
    ***Plaintiff,***                  )
                                      )
**v.**                                )
                                      )
**SYLACAUGA HOUSING AUTHORITY,**      )     **Civil Action No.:**
**SYLACAUGA HOUSING AUTHORITY**       )
**COMMISSIONER JAMES ADAMS, in his**  )     **20-cv-00096-ACA**
**official and individual capacities, SYLACAUGA** )
**HOUSING AUTHORITY COMMISSIONER**    )
**ALMA JEAN COOK, in her official and individual** )
**capacities, SYLACAUGA HOUSING AUTHORITY** )
**COMMISSIONER MATT HUBBARD, in his official** )
**and individual capacities, SYLACAUGA HOUSING** )
**AUTHORITY COMMISSIONER PATRICK**    )
**LOZITO, in his official and individual capacities,** )
**SYLACAUGA HOUSING AUTHORITY**       )
**COMMISSIONER PHILLIP MORRIS, in his** )
**official and individual capacities, and MAYOR OF** )
**SYLACAUGA JIM HEIGL, in his official and** )
**individual capacities.**            )
                                      )
    **Defendants.**                   )

## COUNSEL FOR MICHAEL THREATT'S OPPOSITION TO MOTION TO DISQUALIFY RICHARD RICE AS COUNSEL FOR PLAINTIFF

Plaintiff Michael Threatt, by and through his undersigned counsel, files this

Opposition to the Motion to Disqualify Richard Rice as Counsel for Plaintiff.

Counsel for Plaintiff is also contemporaneously serving a Motion for Sanctions

pursuant to Fed. R. of Civ. Pro. Rule 11 against counsel for Defendants.

Threatt vs. Sylacauga Housing Authority, et al.                                          1
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

## I.   INTRODUCTION

The movants request the extraordinary remedy of denying Plaintiff his right to choose counsel fails. Defendants failed to provide a full record of the evidence to the Court including emails, procurement procedures, Board meeting minutes and other information that would be dispositive to the unfounded allegations against Plaintiff's counsel. Defendants claims are without merit because the undersigned did not enter an attorney client relationship with the SHA and did not discuss any matters related to the instant dispute with any of the SHA Board members, staff or with Michael Threatt prior to being engaged in this matter. SHA never understood that Rice had formed an attorney-client relationship with it or that a fiduciary relationship between Rice and the SHA existed. Prior to receiving the email from opposing counsel, Brandi Frederickson on October 2, 2020, no member of the SHA or anyone acting on its behalf had ever referred to the undersigned counsel as an attorney for SHA.[1]

Plaintiff contends that movants have filed this motion as further retaliation against Threatt, to harass him and/or to increase the costs associated with bringing his claims . The undersigned did not "switch sides" as alleged by counsel for the

---

[1] Rice communicated with SHA's counsel on numerous occasions via email and by phone. Gregg Varner and Spencer Waddell of Gregg Varner Law submitted correspondence to Rice in re Threatt's employment dispute with SHA on at least the following October 24, 2019; December 2, 2019; December 19, 2019; January 27, 2020; SHA Board Chair was copied on each correspondence. Neither Varner nor Waddell indicated they were of the impression or belief that Rice was an attorney for SHA.

Threatt vs. Sylacauga Housing Authority, et al.                                                    2
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

Defendants because there did not exist an, agreement or an understanding for Rice to provide legal services to SHA or that Rice was otherwise retained as its counsel;

Where there is no formal agreement to provide representation, the analysis turns to whether there existed a subjective, reasonable belief on behalf of the putative client that an attorney client relationship existed . The putative client here would by the Sylacauga Housing Authority, a non-profit organization with bylaws, policies and procedures, including specific requirements for it to engage professional services.   Threatt  never  considered Rice  to be an attorney for the SHA and no such  claim was made for some fourteen months during which Rice represented plaintiff and communicated with defense counsel.  The SHA Board members could not have reasonably believed that Rice was an attorney for the SHA for a number of reasons.   Principal among them are that Rice never communicated with the   Board members, individually or collectively,  there was no written or verbal agreement for Rice to provide counsel to the SHA,   Rice never held any meetings, consultations, discussions or exchanged correspondence with the  Board , no fees were paid to Rice, no contract was executed and Rice never performed any services for the SHA.

Moreover, Threatt contacted Rice for purposes of providing an assessment as a consultant to address the disparities in quality of life factors based upon current and historic housing patterns. There was no exchange of confidential information

Threatt vs. Sylacauga Housing Authority, et al.                                                                   3
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

and in fact the information discussed was a matter of public record. Threatt did not

intend for Rice to provide legal advice to the SHA, to retain Rice as counsel for the

SHA or to advise the SHA on current legal issues.  The arguments below should

demonstrate to the Court the following:

a)  **Defendants selectively produced email correspondence and omitted applicable SHA policies and procedures to distort the facts;**

b)  **No professional relationship was ever formed between SHA and Rice; and**

c)  **Notwithstanding the formation of an attorney-client relationship or fiduciary duty, Rice received no information, confidential or otherwise, that would be "substantially related" to this action.**

II.    **STATEMENT OF FACTS**[2]

The facts, as demonstrated by the Declarations of  Michael Threatt, April Collins,

and Richard Rice along with the supporting exhibits, establish the following:

(a) In March 2019, Threatt had one meeting with Rice and exchanged a

few emails with Rice regarding a fair housing assessment (April

Collins) and a so-called "civil rights" assessment pertaining to

housing patterns and quality of life issues but the agreement to

---

[2] Attached hereto are Declarations of Michael Threatt, April Collins and Richard Rice

Threatt vs. Sylacauga Housing Authority, et al.                                                    4
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

provide an assessment did not materialize, no fees were paid and the assessment was never performed  ;

(b) Threatt did not discuss or provide information to Rice regarding SHA operations, adverse employment actions or any matters "substantially related" to this lawsuit, during the March 2019 meeting, follow up emails, or any other time in his capacity as CEO of SHA;

(c) Threatt never met and did not consult with Rice as a member of Threatt's abortive "Lean and Mean" vison list.  Threatt, in his capacity of an SHA official, never sought, and Rice did not give SHA, any advice on civil rights problems at SHA in connection with the "Lean and Mean" list or for any other purpose.  The "Lean and Mean" List was a visionary tool used by Threatt to outline his course for an improved and transformed SHA, which was based on the "Lean Six Sigma" principles. Many aspects of the vision never materialized including hiring Rice as a consultant for SHA.

(d) Rice first learned of the adverse employment actions and dispute between Threatt and SHA in July 2019 after Threatt filed an EEOC charge;

Threatt vs. Sylacauga Housing Authority, et al.                                                   5
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

(e) All of the adverse employment claims and any of the claims asserted by Threatt against SHA materialized in or after June 2019 including the following listed below - Threatt's alleged protected activity, and all of the alleged adverse employment actions, occurred in June 2019 or later  that year  .

(f) On or about August 1, 2019, after Threatt hired Rice as his personal attorney, via an engagement letter (July 2019), Rice emailed Threatt an article regarding the False Claims Act.

(g) As counsel for Threatt, Rice sent a letter to the SHA Board of Commissioners dated September 4, 2020 stating  he would be representing Threatt with regard to the adverse employment actions taken by SHA against Threatt.

(h) Within the previous 12 months, no  fewer than   fourteen (14) current/former SHA executives, employees, or staff have filed EEOC charges against the SHA based on claims of adverse employment including those listed below. Rice has only been retained to represent Threatt.

    i.    Chief Executive Officer: Michael Threatt
    ii.    Chief Financial Officer: Heather Mueller
    iii.    Chief Housing Officer: Danielle Womack
    iv.    Chief Human Resources Officer: Nicole Daniels
    v.    Public Affairs Officer: Kathryn Bibbee

Threatt vs. Sylacauga Housing Authority, et al.
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

6

      vi.     Executive Assistant: Jennifer Harris
      vii.    Human Resources Coordinator: Kimberly McKinney
     viii.   Resident Engagement Manager: Jerethia Blake
      ix.    Assistant Asset Manager: Elaine Machado
       x.    Housing Operations Manager: Carolyn Swain
      xi.    Asset Manager: Beth Jeter
      xii.   Assistant Asset Manager: Adrian Webb
     xiii.   Organizational Development Coordinator: Avis Williams
     xiv.   Administrative Assistant: Renae Harris

## III.   STANDARD OF REVIEW

"Motions to disqualify are governed by two sources of authority." *Herrmann v. Gutterguard Inc.*, 199 Fed. App'x 745, 752 (11th Cir. 2006) (per curiam). "First, attorneys are bound by the local rules of the court in which they appear." *Id*. The Local Rules, the Alabama Rules of Professional Conduct, and the American Bar Association Model Rules of Professional Conduct[2] ("the Rules") govern the professional conduct of attorneys in litigation in the United States District Court for the Northern District of Alabama. N.D.AL., Local Rule 83.1(f). Second, "federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of the parties." *Herrmann*, 199 Fed. App'x at 752.

Also, the Eleventh Circuit has stated:

"[T]he court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power." *Schlumberger* [*Techs., Inc. v. Wiley* , 113 F.3d [1553] at 1561 [(11th Cir. 1997)]. Instead, "[t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Id.*
The party bringing the motion to disqualify bears the burden of proving the grounds for disqualification. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir.2003). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *Id.* A disqualification order "is a harsh sanction, often working substantial hardship on the client" and should therefore "be resorted to sparingly." *Norton v. Tallahassee*

Threatt vs. Sylacauga Housing Authority, et al.          7
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

*Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982). A motion to disqualify brought by opposing counsel "should be viewed with caution . . . for it can be misused as a technique of harassment." Ga. Rules of Prof'l Conduct, R. 1.7, cmt. 15. *Herrmann*, 199 Fed. Appx. at 752; *see also* Ala. R. Prof. Cond. 1.7 cmt. *Conflict Charged by an Opposing Party*; *see generally Herrmann*, 199 F. App'x at 752 (citing with approval identical language from the comments to the Georgia Rules of Professional Responsibility).

"Recognizing that the consideration of a motion to disqualify involves a range of competing interests, this court [AL Middle and Southern Districts][3] opted to follow the balancing approach outlined by the Eighth Circuit Court of Appeals in *Meat Price Investigators Ass'n v. Spencer Foods, Inc., 572 F.2d 163* (8th Cir. 1978), which requires a balancing of the following three competing interests: "(1) the client's interest in being represented by counsel of its choice; (2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and (3) the public's interest in the scrupulous administration of justice." *Id.* at 165."

*Crum v. Alabama*, 453 F. Supp. 2d 1323, 1331 (M.D. Ala. 2001)

> Included in this balancing is a consideration of other important issues. First, ethical violations come in varying degrees of severity, but disqualification is always a drastic measure, which courts should hesitate to impose except when absolutely necessary. See, e.g., *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993); *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp.*, 961 F. Supp. 1580, 1582 (M.D. Fla. 1997) ("The disqualification of one's chosen counsel is an

---

[3] *Mt. Hebron Dist. Missionary Baptist Ass'n of AL, Inc. v. Sentinel Ins. Co.*
CASE NO.: 3:16-cv-658-CDL-GMB [WO] (M.D. Ala. Sep. 7, 2017)
*Hershewe v. Givens*
89 F. Supp. 3d 1288 (M.D. Ala. 2015)
*SLF Holdings v. Uniti Fiber Holdings*
CIVIL ACTION: 1:19-00333-KD-C (S.D. Ala. Aug. 30, 2019)
*Williams v. Aircraft Workers Worldwide, Inc.*
CIVIL ACTION 09-0411-WS-M (S.D. Ala. Jul. 22, 2010)
*Lynn v. Romar Marina Club, LLC.*
Civil Action No. 07-0173-KD-C (S.D. Ala. Dec. 1, 2009)
*Pigott v. Sanibel Development, LLC*
CIVIL ACTION 07-0083-WS-C (S.D. Ala. Sep. 17, 2007)
*In re Breland*
Case No.: 16-2272-JCO (Bankr. S.D. Ala. Oct. 16, 2017)

Threatt vs. Sylacauga Housing Authority, et al.                    8
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

extraordinary measure that should be resorted to sparingly."). Second, because of the impact a motion to disqualify has on the party losing her counsel, the moving party is held to a high standard of establishing the basis of the motion, and the need for disqualification. *See, e.g., Plant Genetic Sys. v. CIBA Seeds, 933 F. Supp. 514, 517* (N.D.N.C. 1996) ("Disqualification is a serious matter which cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified."); *English Feedlot, Inc. v. Norden Lab., Inc.*, 833 F. Supp. 1498, 1506 (D. Colo. 1993) ("The moving party has the burden of showing sufficient grounds for disqualification. . . . Specific facts must be alleged and `counsel cannot be disqualified on the basis of speculation or conjecture.'"); *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990) ("The Court is also aware that the disqualification of a party's chosen counsel is a serious matter which cannot be based on imagined scenarios of conflict."). Third, other means of addressing a violation short of disqualification are available to the court — like exclusion of ill-gotten evidence — and should be used when appropriate. See, e.g., *University Patents, Inc. v. Kligman*, 737 F. Supp. 325, 329 (E.D. Pa. 1990) ("the court is satisfied that the circumstances warrant precluding the defendants from introducing any information obtained through Mr. Morrison's ex <u>parte</u> contacts with persons whose statements could bind the University.").

Finally, because a motion for disqualification is such a "potent weapon" and "can be misused as a technique of harassment," the court must exercise extreme caution in considering it to be sure it is not being used to harass the attorney sought to be disqualified, or the party he represents. See, e.g., *Kitchen v. Aristech Chem*., 769 F. Supp. 254, 256-57 (S.D. Ohio 1991); see also *Developments in the Law: Conflict of Interest in the Legal Profession*, 94 Harv. L. Rev. 1244, 1285 (1981) ("Lawyers have discovered that disqualifying counsel is a successful trial strategy, capable of creating delay, harassment, additional expense, and perhaps even resulting in the withdrawal of a dangerously competent counsel.").

*Crum v. Alabama*, 453 F. Supp. 2d 1323, 1331-32 (M.D. Ala. 2001)

Threatt vs. Sylacauga Housing Authority, et al.
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

9

## IV.   APPLICABLE RULES

1.  Alabama Rules of Professional Conduct – Rule 1.9.

2.  Alabama Rules of Professional Conduct – Rule 1.7

3.  Northern District of Alabama. N.D.AL., Local Rule 83.1(f)

4.  Ala. R. Prof. C. 1.13(d); ABA Model Rule 1.13(f).

5.  ABA Rule 5.7 Responsibilities Regarding Law-Related Services – Comment

6.  Alabama Rules of Professional Conduct – Rule 3.3

7.  Alabama Rules of Professional Conduct – Rule 3.4

## V.   ARGUMENT

1.  **Motion To Disqualify is Opportunistic and In violation of Rule 11: Defendants selectively produced email correspondence and omitted applicable SHA policies and procedures to distort the facts;**

Defendants' falsely state that Plaintiff's counsel, Rice, had an attorney-client relationship with Defendant SHA. The adverse employment dispute involving Michael Threatt and SHA began on or about June 2019 and was formalized when Threatt filed his EEOC charge against the SHA in July 2019.  Threatt then retained Rice as personal counsel. From there, Rice communicated with the SHA Board of Commissioners and its counsel on behalf of Threatt as early as August 2019. Defendants' Motion requests relief that would be in violation of the principle that a motion to disqualify counsel "should be viewed with caution ... for it can be

Threatt vs. Sylacauga Housing Authority, et al.                                                                10
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

misused as a technique of harassment." Herrmann, *supra* at   752 (11th Cir. 2006);

citing Ga. Rules of Prof'l Conduct, R. 1.7, cmt. 15; accord, Ala. Rules of Prof'l

Conduct, Rule 1.7, cmt. CONFLICT CHARGED BY AN OPPOSING PARTY

("Such an objection should be viewed with caution, however, for it can be misused

as a technique of harassment.").

Until the filing of the Motion to Disqualify, there was never any reference to, or

mentioning of, the notion that Rice had  at any time represented the SHA or

performed any services for it. Only now, over fourteen (14) months after Rice first

contacted the SHA on behalf of Threatt, do the Movants claim that Rice was a

former attorney for the SHA.

Counsel is correct that the Rules of Professional conduct require attorneys to

report ethical rule violations to a tribunal or other authority empowered to

investigate or act upon such violation, but likewise the same Rules   and the

Federal Rules of Civil Procedure impute upon every attorney a duty to act in good

faith and to verify in writing, by filing or otherwise that the attorney certifies to the

best of the attorney's knowledge, information and belief, <u>formed after an inquiry</u>

reasonable under the circumstances, is not being submitted for any improper

purposes (harassment, to cause unnecessary delay or needlessly increase the cost of

litigation), that the claims are warranted and are supported by evidence or will be

after further investigation. Counsel conveniently overlooks the duty of Candor

Threatt vs. Sylacauga Housing Authority, et al.                                                                           11
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

Toward the Tribunal and the duty of Fairness to Opposing Party and Counsel as outlined in Rule 3.3 and Rule 3.4 Ala. R. Prof. Conduct.

While the movants state, "Movants and their counsel do not make this Motion lightly and are aware that disqualifying counsel for a party is a harsh sanction ," they have presented no evidence in support of their motion that there was ever an attorney client relationship between Rice and the SHA. There is no independent contractor's agreement, no Board meeting minutes in which Rice is listed as an attorney or consultant, no procurement agreement with the Board of Directors, no invoices for services, no authorized payment by the SHA to Rice, no professional services of any kind performed by Rice for the SHA, no work product from Rice to the SHA, and no evidence of any relevant, confidential or proprietary information gained by Rice from SHA or any other source.

### 2. No professional relationship was ever formed between SHA and Rice - No Attorney-client Relationship existed between Rice and the SHA – Rule 1.7 and Rule 1.9;

In *Mississippi Valley Title Ins. Co. v. Thompson*, 802 F.3d 1248, 1253–54 (11th Cir. 2015), the Court held

> "To create an attorney-client relationship, **there must be an employment contract 'either express or implied'** between an attorney and 'the party for whom he purports to act or someone authorized to represent such party.'" *Bryant. v. Robledo*, 938 So.2d 41, 418 (Ala.Civ.App.2005) (quoting Bd. Of Comm'rs of the Ala. State Bar v. Jones, 291 Ala 371, 281 So.2d 267, 273 (1973)). In this context the perception and intent of the putative client as to the formation of that contract is particularly relevant. E.g. *Green v. Montgomery Cnty., Al.*, 784 F.Supp. 841, 845-46 (M.D.Ala.

Threatt vs. Sylacauga Housing Authority, et al.                                    12
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

> 1992)("[T]he test for determining the existence of [an attorney-client] relationship is a subjective one and 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.'"(quoting *1254 *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.1978))).

Here, there is no "employment contract 'either express or implied'" as there was no agreement between Rice and SHA or Rice and Threatt to provide representation or consulting services for SHA. Because there was no such agreement,   there is no violation of either Alabama Rule  of Professional Conduct  1.9 or 1.7. Defendants argue that "SHA does not have any document or other indication attorney Rice ever terminated his former attorney-client relationship with SHA" as evidence of an ongoing representation but failed to place the same emphasis on the fact that SHA has no agreement, engagement letter, procurement proposal, payment or other writing indicating  that any professional relationship had been entered into between Rice and SHA. Absent any such agreement, it is hardly surprising that there is nothing documenting its termination.

Absent a written agreement or other writing evidencing a professional relationship, the analysis is subjective and looks to the nature of the communications between Rice and SHA (Threatt, in his capacity as CEO). See generally, *Mississippi Valley Title Ins. Co. v. Thompson*, 802 F.3d 1248, *Green v. Montgomery Cnty.*, Ala., 784 F.Supp. 841, 845-46 (M.D. Ala. 1992).

Threatt vs. Sylacauga Housing Authority, et al.                                           13
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

### a. Threatt, as CEO of SHA, did not subjectively believe he had engaged Rice as legal counsel on behalf of SHA;

Threatt states that he did communicate with Rice for purposes of engaging Rice, as a consultant, to provide an assessment for the SHA. Although it did not materialize, the assessment would have determined best practices to address housing segregation and quality of life factors related to where one resides. The matters to be reviewed for the assessment are based upon historical housing patterns and are otherwise based on public information. Threatt further stated that while Rice was contacted and identified on internal communications, Rice never was hired or contracted to provide the assessment. Collins specifically stated in response to the scope of work that the project was not feasible and could not proceed. Rice affirmed the same.

Here, the emails provided by SHA in support of its motion   specifically state that Collins and Rice did not agree to provide the assessment due to the breadth  and scope of work and the allocated budget. Moreover, upon reviewing the entirety of the email exchange, the procurement policy for SHA, and the actual process followed by SHA to hire counsel, it becomes abundantly clear there existed no attorney client relationship. Rice did not communicate with any  SHA member or employee   other than Threatt and Threatt has clearly stated he did perceive Rice as counsel for SHA. Notwithstanding the self-serving representations of the Defendants as it relates to the "Lean and Mean" six sigma

Threatt vs. Sylacauga Housing Authority, et al.
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

14

list, Threatt did not communicate, and did not contemplate  communicating, that Rice was an attorney for SHA.  Even if the Court could find an attorney-client relationship existed despite   Collins stating the budget and scope were not workable ,   the Declarations of Rice, Collins and Threat specifically   reject the validity of any such notion.

### b. Communications with Threatt were for "law related" services that did not materialize;

Defendants' analysis is contrary to the principle that "conflict of interest must be actual, and not speculative." *U.S. v. Tobon-Hernandez*, 845 F.2d 277, 281 (11th Cir. 1988). There can be no actual conflict of interest because Rice did not provide prior (or current) representation to SHA and he did not provide the law related services discussed.

SHA argues that Threatt, as Chief Executive Officer, for a non-profit/quasi-governmental entity, entered into an attorney client relationship with Rice on behalf of SHA. SHA wholly avoids facts that  contradict its claims, including: (a)There is no agreement, formal or informal, between Rice and SHA; (b) Threatt denies he ever contemplated Rice as an attorney for SHA (c) SHA procurement policy required Board approval to hire legal counsel; (d) Rice never communicated with SHA Board members;

### 3. Notwithstanding the formation of an attorney-client relationship or fiduciary duty, Rice received no information, confidential or otherwise,

Threatt vs. Sylacauga Housing Authority, et al.                                                    15
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

**that would be "substantially related" to this action. - No Confidential Information discussed or gained by Rice;**

To the extent, if any, confidential information gained from a purported "former representation" of SHA is at issue, Threatt did not communicate or share with Rice any information, confidential or otherwise, that would be "substantially related" to this action. Moreover, Defendants' Motion further ignores the Eleventh Circuit's mandate that: The moving party has to show more than the mere fact that as a result of a former representation, the attorney has knowledge of the moving party's practices and procedures. The moving party must demonstrate that the attorney "has knowledge of the particular practices and procedures which are the subject matter of the suit." *Herrmann*, 199 Fed. Appx. at 753 (internal citations omitted).

The communications between Rice and Threatt as SHA's CEO   were limited to information that was within the public domain and the matters (housing segregation based on historical land-use planning and related quality of life factors) were not "substantially related" to the instant dispute; and as such there was no discussion of SHA matters that were confidential or privileged.

Threatt stated that he met with Rice and Collins on one occasion in early March 2019 to discuss the possibility of  their providing an assessment and that there were subsequent email exchanges related to the same. On the tour, Threatt stated he discussed the factors related to the segregated housing and how to address

Threatt vs. Sylacauga Housing Authority, et al.                                                                        16
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

associated quality of life factors. He indicated a need to identify best practices that would serve to address the segregation issue through an assessment and creating a plan to address quality of life issues. Additionally, Threatt discussed future aspirations for residents (initiatives to improve quality of life factors) and potential development plans through the Rental Assistance Demonstration (RAD) program. Threatt did not discuss any of the mismanagement of federal funds by the previous SHA administration (FCA issues), the failed Board assessment by the Board of Commissioners (SHA operations/employment issues), or the forensic audit of the SHA (FCA issues).[4] Additionally, Threatt did not discuss his relationship with the SHA Board of Commissioners or any employment matters with Rice or Collins. Even though, there was no agreement to provide the assessment, the proposed "Scope of Work" of which Defendants' attached to their motion to disqualify counsel as an exhibit specifically stated that the assessments would have been based on data generated by the HUD AFH tool. The data generated via the HUD AFH tool is public information. The Declarations of Collins, Threatt and Rice confirm the same.

4. **Rule 1. 9 Does Not Apply - SHA is not a former client and no fiduciary relationship was formed – If the Court finds there was a Former Client relationship -  The Matters are Not "Substantially Related"**

---

[4] Although these matters were not addressed, each of these matters would have been discussed or the findings addressed in SHA Board meetings prior to March 2019. SHA Board meetings are open to the public as required by federal and state law. The SHA Board meeting minutes are likewise a matter of public record.

Threatt vs. Sylacauga Housing Authority, et al.                                    17
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

The Eleventh Circuit has stated that the first step in assessing a possible Rule 1.9(b) violation is to determine whether the matters were substantially related considering "the precise nature of the relationship." The court can only determine that the substantial relationship test has been met "when the moving party delineates with specificity the subject matters, issues and causes of action presented in former representation." *Cox v. Am. Cast Iron Pipe Co*., 847 F.2d 725, (11th Circuit)(quoting Duncan, 646 F.2d at 1029) "the moving party has to show more than the mere fact that as a result of a former representation, the attorney has knowledge of the moving party's practices and procedures." *Cox v. Am. Cast Iron Pipe Co*., 847 F.2d 725, (11th Circuit)(quoting *Duncan*, 646 F.2d at 1032) "the moving party must demonstrate that the attorney has knowledge of the particular practices and procedures which are the subject matter of [the] suit" *Id*.

The second step is determining whether the interests of the clients in the former and present representations are materially adverse. – It is undisputed in this case that the interests are materially adverse. *See* comments on Rule 1.9(c) "preserving confidentiality is a question of access to information." *Id*. Rule 1.9 cmt. N. 6. "access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that

Threatt vs. Sylacauga Housing Authority, et al.                                                                18
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

reasonably may be made about the way in which lawyers work together." *Id*. cmt. N.6.

Defendants' also  claim that Richard Rice represented SHA regarding assessing SHA's "civil rights" matters, which are substantially related to the claims Threatt asserts against SHA in the instant lawsuit. The allegations vaguely connect Threatt's False Claims Act retaliation claim and his Fair Housing Act retaliation claim to the matters related to the proposed assessment. However, this allegation also fails. Due to the vagueness and failure of SHA to "delineate with specificity the subject matters, issues and causes of action presented in former representation" SHA has failed to meet the required standard and thus the requested relief is due to be denied on that basis alone.  Second, Rice never represented SHA.   A professional relationship was contemplated but, for the reasons stated, never entered into and communications were limited to determining if the proposed engagement was feasible. Defendants have failed to specifically, or even generally, delineate how the matters contemplated between Rice and Threat are substantially related to this litigation. Rather  they broadly refer to "civil rights," as if an employment discrimination action is substantially related to a claim of false arrest under 42 U.S.C. 1983  . Here, the allegations against the SHA all stem from an

Threatt vs. Sylacauga Housing Authority, et al.                                                                    19
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

adverse employment action alleging hostile work environment, and retaliation,[5] completely unrelated to the proposed assessment.

As stated above, the assessment would have determined best practices to address housing segregation and quality of life factors related to where one resides. The matters to be reviewed for the assessment are based upon historical housing patterns and are otherwise within the public domain. The instant lawsuit filed by Threatt against SHA is based upon adverse employment actions.

## VI.   CONCLUSION

The only direct record evidence as to whether Richard Rice/The Rice Firm, LLC  had an attorney-client relationship with Sylacauga Housing Authority at any time, is found in the declarations of Plaintiff, Michael Threatt, April Collins and Richard Rice, which unequivocally state no such relationship existed. Other than the self-serving retroactive interpretation of emails and a "Lean & Mean" list by SHA counsel, that  evidence is uncontroverted.

For at least the following reasons, the Defendants' motion fails and falls short of the required burden to disqualify and remove Plaintiff's choice of counsel in this matter. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir.2003).  The uncontroverted record evidence demonstrates (a) There was no agreement – *formal*

---

[5] The Pattern Jury Instructions for the 11th Circuit delineates at least twelve sub-categories within the "Civil Rights" category. The "Adverse Employment Action" claims are separate and apart from "Civil Rights" and are subdivided into at least twenty-seven (27) sub-categories.

Threatt vs. Sylacauga Housing Authority, et al.                                                                       20
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

*or informal* --   between Rice/The Rice Firm, LLC  and Sylacauga Housing

Authority for Rice to provide counsel or law related services for SHA; (b) Collins

specifically stated the assessment was not feasible and the necessary data (which

was in the public domain) was not available and thus the assessment could not

proceed; Rice confirmed the same;  (c) Threatt did not subjectively view Rice as an

attorney for the SHA – Defendants' arguments to the contrary have no foundation

in fact and are not supported by law, and are purely speculative. If Defendants had

conducted reasonable investigation or modest inquiry prior to the filing of the

motion to disqualify, it would have been apparent that Rice did not have any

professional relationship with SHA and that no attorney client relationship existed.

In consideration of the forgoing factually supported arguments and "because a

motion for disqualification is such a "potent weapon" and "can be misused as a

technique of harassment," the movants' request is due to be denied. *Crum v.*

*Alabama*, 453 F. Supp. 2d 1323, 1331-32 (M.D. Ala. 2001) and *Norton v.*

*Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)

　　　Moreover, there was no legitimate and good faith reason for Defendants to

file their Motion. Given the lack of evidentiary support, and the omission of key

facts from the movants motion[6], the only apparent reasons for Defendants and their

---

[6] Defendants will likely argue they did not have access to the SHA email account for Michael Threatt at the time of filing the Motion to Disqualify because they could not access it from his SHA devices but that contention fails because the SHA email server would maintain a complete record of email correspondences for all messages received or sent via SHA's server/domain.

Threatt vs. Sylacauga Housing Authority, et al.                                                             21
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

attorneys have for filing the motion was to increase costs and harass Plaintiff, which the Eleventh Circuit and our State's ethical Rules caution against. *see* Ala. R. Prof. Cond. 1.7 cmt. *Conflict Charged by an Opposing Party*; *see generally Herrmann*, 199 F. App'x at 752;

**WHEREFORE PREMISES CONSIDERED**, Plaintiff requests that this Court deny Defendants' Motion to Disqualify without further proceedings, and specifically without the necessity of an evidentiary hearing, because the motion has already unreasonably increased the costs of these proceedings in this action and is without merit and unsupported by factual evidence. Plaintiff also requests the Court award him reasonable attorneys' fees and expenses incurred in connection with Defendants' motion, and assess those fees and expenses against Defendants and their attorneys.[7]

Respectfully submitted this day of November 13, 2020.

s/Richard A. Rice
Richard A. Rice, Esq.
(ASB-8387-I66R)
Attorney for Michael C. Threatt
The Rice Firm, LLC
N. 420 20th Street
Birmingham, Alabama 35203

---

[7] Counsel for Plaintiff (Rice) has contemporaneously served a proposed Motion for Sanctions pursuant to Rule 11 FRCP to Defendants counsel and will file the same upon the expiration of twenty-one (21) days if the Defendants' Motion to Disqualify is still pending.

Threatt vs. Sylacauga Housing Authority, et al.
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

22

Suite 2200
rrice@rice-lawfirm.com
F. 888.391.7193
O. 205.618.8733

Threatt vs. Sylacauga Housing Authority, et al.
Case No. 20-cv-00096-ACA
Plaintiff's Response to Motion To Disqualify Counsel

23