IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MICHAEL C. THREATT,<br><br>Plaintiff,<br><br>v.<br><br>SYLACAUGA HOUSING AUTHORITY, SYLACAUGA HOUSING AUTHORITY COMMISSIONER JAMES ADAMS, in his official and individual capacities, SYLACAUGA HOUSING AUTHORITY COMMISSIONER ALMA JEAN COOK, in her official and individual capacities, SYLACAUGA HOUSING AUTHORITY COMMISSIONER MATT HUBBARD, in his official and individual capacities, SYLACAUGA HOUSING AUTHORITY COMMISSIONER PATRICK LOZITO, in his official and individual capacities, SYLACAUGA HOUSING AUTHORITY COMMISSIONER PHILLIP MORRIS, in his official and individual capacities, and MAYOR OF SYLACAUGA JIM HEIGL, in his official and individual capacities.<br><br>Defendants. | Civil Action No.:<br><br>20-cv-00096-ACA |

## AFFIDAVIT OF MICHAEL THREATT

I, Michael C. Threatt, declare under penalty of perjury that the following facts are true and correct to the best of my information and belief:

1. I am the Plaintiff, Michael C. Threatt, in this matter.

2. I am the former Executive Director and former Chief Executive Officer (CEO) of the Sylacauga Housing Authority (SHA).

3. I am an experienced executive-level affordable housing professional with nearly 15 years of experience working in the public housing sector of the real estate industry and I currently hold the following degrees and certifications listed below.

    a. West Chester University, Doctoral Candidate, December 2020 (Public Administration with concentration Public Policy);

    b. University of South Florida, Master of Arts (Criminal Justice Administration with a concentration in Public Administration);

    c. University of Alabama at Birmingham, Bachelor of Science (Psychology with a minor in Sociology);

    d. Public Housing Executive Management certification;

    e. Housing Choice Voucher Program Executive Management certification;

    f. Other affordable housing certifications.

4. As ED/CEO of the SHA, I did not engage Richard Rice ("Rice") to provide legal services for the SHA or to be an attorney for the SHA. Although it did not materialize, I contacted Mr. Rice for the purpose of providing an assessment which would have been law related but not for the purposes of securing Rice as counsel for the SHA.

5. As the CEO of the SHA, I asked Mr. Rice to assist with correcting and addressing the high-risk of segregation for the SHA as a consultant. I did so after a February 28, 2019 meeting our executive staff had with the U.S. Department of Housing and Urban Development (HUD) Birmingham Field Office and the Alabama Fair Housing and Equal Opportunity (FHEO) staff, where we were told that SHA was high-risk for segregation. The facts they cited were matters of public record. In light of this, I contacted Richard A. Rice and April H. Collins to visit the area to assist me with correcting this deficiency as consultants based on their capacity, competence, experience, and skillset.

6. I communicated with Mr. Rice through email and in March 2019 and I gave Mr. Rice a tour of our developments, but a scope of work was never agreed upon nor was there ever a contract or a letter of commitment to perform the civil rights assessment for the SHA.

7. On the tour, I discussed what we had been told by the HUD Field. We discussed how the SHA could address the segregation issue through an assessment and creating a plan to address quality of life and civil rights issues. Additionally, I discussed the things that the SHA was planning to do for its residents and the potential development plans through the Rental Assistance Demonstration (RAD) program. I did not discuss any of the mismanagement of federal funds by the previous SHA administration, the failed Board assessment by the Board of Commissioners, or the forensic audit of the SHA.

8. As CEO of the SHA, I did not refer to Mr. Rice, think of him, or believe he was an attorney for the SHA or that I had formed an attorney client relationship with him on behalf of the SHA.

9. Neither Mr. Rice nor the Rice Firm was ever paid any money; and neither of them ever received an SHA check from, or on behalf of, the SHA. Our policies required that both I and our CFO, Heather A. Mueller, sign any such checks so it would be impossible for any to be issued without my knowledge.

10. SHA attorneys were selected through the Request for Proposal (RFP) process or a signed legal representation letter based on the procurement policy of the SHA. Under that policy, I formally hired and retained at least the following attorneys for purposes of providing legal services and legal representation on behalf of and for the benefit of the SHA during my tenure as ED/CEO.

   a. Michael Syme, *Esq.* was retained by contract in August 2019;
   b. Michael Cohen, *Esq.* was retained by contract in April 2019;
   c. James "Jim" Beck, *Esq.* was retained by contract in April 2019;
   d. Stephanie Weems, *Esq.* was retained by letter of representation in May 2018;

11. As an ethical public administrator and experienced professional, I would not have violated the procurement policy of the SHA by hiring an attorney without abiding by the procurement policy enacted under my leadership. Likewise, an agreement was never made, the scope of work was never finalized, and the compensation amount was never agreed upon for Collins or Rice, as consultants.

12. In July 2019, I put to paper my vision for an improved and transformed SHA, which I called, "Lean and Mean" based on the "Lean Six Sigma" model and sent it to my executive staff. I listed several categories of persons from whom I would seek advice. Since I was impressed with Mr. Rice when I met him earlier in the year, I placed his name on the list as a potential contractor to provide services related to the fair housing assessment and quality of life issues as they relate to one's housing. My "Lean and Mean" vision never got off the ground. I therefore never met and I did not consult with Mr. Rice as a member of my abortive "Lean and Mean" vison list. I never sought, and he did not give me, any advice on civil rights problems at SHA in connection with the "Lean and Mean" list or for any other purpose.

13. All of the adverse employment claims and any of the claims that I asserted against the SHA materialized in or after June 2019 including the following listed below:

   a. Commissioner Phillip Morris attends first Board of Commissioners meeting in June 2019; Reputation for being racist, bigoted, and opposing fair housing principles.

    b. I send reports to and meet with HUD Birmingham Field Office in June and July 2019;

    c. I send reports to and meet with the HUD Birmingham Office of Inspector General (OIG) in July 2019;

    d. I filed a complaint with Fair Housing Center of North Alabama in July 2019;

    e. I filed a complaint with Department of Justice (DOJ) through the Fair Housing Center of North Alabama in July 2019;

    f. Retaliation and hostile work environment began in July 2019;

    g. FMLA leave occurred in August 2019;

    h. I was placed on Administrative Leave in September 2019;

    i. I was Wrongfully Terminated in October 2019;

14. Mr. Rice did not become my attorney until July 2019 when I filed my first EEOC employment discrimination charges. Neither before or after he became my personal attorney, did I consider there to be an attorney-client relationship between the SHA and Rice or his firm, or, indeed, any kind of professional relationship with him or his firm in any capacity. While a consultant relationship was considered, as explained above, it never materialized. During the few communications we had to discuss the relationship, I never shared or discussed any internal SHA matters, confidential or otherwise. As noted above, what little we discussed was in the public domain.

**[SIGNATURE PAGE TO FOLLOW]**

_____
Michael C. Threatt
Plaintiff

Sworn to and subscribed before me this
4th day of November, 2020.

_____ Notary Public

[Notary Seal: Kenneth M. Daniels, Notary Public, Alabama State at Large]