IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL C. THREATT,** <br><br> **Plaintiff,** <br><br> v. <br><br> **SYLACAUGA HOUSING AUTHORITY, COMMISSIONERS JAMES ADAMS, ALMA JEAN COOK, MATT HUBBARD, PATRICK LOZITO, PHILLIP MORRIS, AND MAYOR OF SYLACAUGA JIM HEIGL,** <br><br> **Defendants.** | Civil Action No. <br> **20-CV-00096-ACA** |

**MOVANTS' REPLY TO RICHARD RICE'S RESPONSE (DOC. 61)
TO MOTION TO DISQUALIFY RICHARD RICE
AS COUNSEL FOR PLAINTIFF AND FOR ADDITIONAL RELIEF**

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

## I.   TIMELINE[1]

| Date | Event |
|---|---|
| 2/28/19 | Threatt contacts Richard Rice about providing a Civil Rights Assessment for SHA (Doc. 61-4 p.1) |
| 3/06/19 | "Meeting to discuss Civil Rights Assessment Services" between Threatt, Rice, and Collins (Doc. 61-4 p.2) |
| 3/12/19 | Rice thanks Threatt for "the opportunity to provide the civil rights assessment for" SHA and requests "additional details, timeline for deliverables, etc." and is "looking forward to engaging this project and am truly excited to see where it leads." (Doc. 61-4 p.9) |
| 3/12/19 | Threatt forwards Rice's March 12, 2019 e-mail to Chief Housing Officer (Womack) and Chief Administrative Officer (Green), who drafted the scope of work, and refers to Rice as "the Civil Rights **attorney**." (Emphasis added). (Doc. 56-1 p.1) |
| 3/13/19 | Green forwards the draft Fair Housing and Civil Rights Scope of Work to Womack and Threatt. (Doc. 56-2 p.2-3) |
| 3/13/19 | Threatt forwards the draft Fair Housing and Civil Rights Scope of Work to Rice and Collins (Doc. 56-2 p.2) |
| 3/21/19 | Collins e-mails Threatt stating concerns with budget and time constraints for the draft scope of work and proposed "we provide an initial limited assessment based on our original discussions." (Doc. 56-2 p.2) |
| 3/21/19 | Rice agrees with Collins: "I to [sic] would like to address similar concerns with regard to the breadth of the scope of work and the limited resources (time and budget) devoted to this undertaking. I am available for a phone conference at your convenience." (Doc. 56-2 p.1-2) |
| 3/21/19 | Threatt responds stating "This is great news and feedback. I will follow-up with my staff as it relates to an administratively feasible scope of work. I agree with the cost-effective perspective that should include an assessment, plan and training for both Fair Housing and Civil Rights. I |

---

[1] The timeline is meant to assist the Court.

1

Case 1:20-cv-00096-ACA   Document 64   Filed 11/20/20   Page 3 of 13

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

| Date | Event |
|---|---|
|  | will have more information soon.  With this said, how does your schedule look in April to perform this work for the SHA?" (Doc. 56-2 p.1) |
| 3/21/19 | Rice responds stating "I have an unusually high number (for me) of depositions in April but no trial settings at this time so I would be available to perform the work we discussed on our tour of Sylacauga." (Doc. 56-2 p.1) |
| 7/19/19 | Threatt forwards Collins's e-mail regarding "concerns" with the scope of work for the assessments to his Chief Housing Officer (Womack), Chief Financial Officer (Mueller), and Chief Human Resources Officer (Daniels) and states "I need your help with securing them these assessments." Exhibit 1, attached hereto.[2] |

## II. ARGUMENT

### A. The Prior Attorney-Client Relationship Between SHA and Rice

Plaintiff suggests Rice was to be a "consultant" on a "law related" assessment, but not an attorney for SHA.  Doc. 61-2 ¶4-5.  Threatt swears he "did not refer to Mr. Rice, think of him, or believe he was an attorney for the SHA."  Doc. 61-2 ¶8.  These assertions and suggestions are belied by the contemporaneous e-mails and documents Threatt himself prepared (Docs. 56-4, 56-5, 56-6).  In said documents

---

[2] In fn 6 of Plaintiff's Response (Doc. 61), Threatt vaguely refers to his deletion of all e-mails on the SHA desktop, laptop, tablet, and cell phone he used in connection with his employment for SHA, which deletion was raised with Plaintiff's counsel during an October 8, 2020 telephone conference regarding the pending motion.  Threatt's assertion his SHA-related e-mails are otherwise available on SHA's server is false. SHA will offer testimony at the December 3 hearing regarding the substantial gap in Threatt's e-mails.  As a result, SHA's counsel was forced to piece together the e-mails submitted with the motion from other former employees' Outlook data files and Microsoft365 server facility, as the bulk of Threatt's e-mails were deleted, and not by SHA. The July 19, 1029 e-mail submitted herewith, was recovered by a forensic data analyst expert from the SHA laptop Nicole Daniels used during her employment with SHA.

2

Case 1:20-cv-00096-ACA   Document 64   Filed 11/20/20   Page 4 of 13

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

and e-mails, Threatt did not refer to Rice as a consultant. Instead, Threatt only referred to Rice as an attorney. Also, in connection with the civil rights assessments he contemplated for SHA and discussed with Rice; he identifies the "Rice Law Firm,"[3] not Rice as consultant.

Putting aside Threatt's post hoc rationalization, the documents before the Court establish a prior attorney-client relationship between Rice and SHA.

All parties agree the Eleventh Circuit's test for determining the existence of an attorney-client relationship is found in *Mississippi Valley Title Ins. Co. v. Thompson*, 802 F.3d 1248 (11th Cir. 2015). (Doc. 57 12-13 & Doc. 61 12-13). The Eleventh Circuit held, in pertinent part, "the test … hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." *Thompson*, 802 F.3d at 1253-54.

Threatt's affidavit admits: "I contacted Mr. Rice for the purpose of providing an assessment which would have been law related." Doc. 61-2 ¶4. Rice's brief admits: "Threatt has clearly stated he did perceive Rice as counsel for SHA." Doc. 61 p.14. These **admissions** Rice ignores and would have the Court ignore, despite that each admission alone satisfies *Thompson*'s test.

---

[3] Notably, the page on Rice's website describing "Legal Services" states his **law** practice includes "Small Business Consulting." Rice, himself, refers to this as part of his **law** practice, not a separate "non-legal" consulting service. *See* Exhibit 2, attached hereto.

3

Case 1:20-cv-00096-ACA   Document 64   Filed 11/20/20   Page 5 of 13

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

Threatt referred to Rice as "the Civil Rights attorney" (**not** consultant) on March 12 (just days after their March 6 meeting) when forwarding Rice's e-mail stating Rice's appreciation "for the opportunity to provide the civil rights assessment for your Housing Authority." Doc. 56-1 p.1. Threatt also repeatedly referred to Rice as SHA's "Civil Rights" attorney (**not** consultant) in internal SHA documents in which he lists at least 4 other attorneys Threatt admits were SHA's attorneys. *See* Docs. 56-4 p.3; 56-5 pp.3, 11; 56-6 p.3; Doc. 61-2 ¶10.

In addition to identifying Rice as SHA's Civil Rights "attorney," Threatt indicated the "Rice Law Firm" (**not** Richard Rice, consultant) would be conducting the "Civil Rights" Assessment at the designated cost of $10,000. Doc. 56-5 p.3-4. Moreover, as late as July 19, 2019, Threatt asked his executive staff to help him secure Rice (and Collins) to perform the civil rights and fair housing assessments, further evidencing Threatt's intent, as SHA's CEO, to seek professional legal advice from Rice. *See* Exhibit 1 hereto; *Green v. Montgomery Cty., Ala.*, 784 F. Supp. 841, 845-46 (M.D. Ala. 1992).

Rice makes much ado about there not being any "engagement letter," "procurement proposal," or "payment." *See* Doc. 61 p.13. However, an engagement letter, procurement proposal, and payment are not necessary, and an attorney-client relationship "extends to preliminary consultation by a prospective client with a view

Case 1:20-cv-00096-ACA   Document 64   Filed 11/20/20   Page 6 of 13

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

to retention of the lawyer, although actual employment does not result." *Green*, 784 F. Supp. 841, 845-46.

Threatt and Rice met on March 6 to discuss and discussed Rice's performing a civil rights assessment using "limited resources (time and budget)." Doc. 56-2 p.1-2. A few days later, Threatt forwarded a draft scope of work, and Rice (and Collins) responded by stating concerns that the draft scope was too broad to be performed within the budget and time frames discussed. *Id.* Threatt stated he would work with his staff to provide an "administratively feasible scope of work," and asked if Rice (and Collins) were available in April "to perform this work for the SHA." Doc. 56-2 p.1. Rice responded that he "would be available to perform the work we discussed" during the March 6 meeting. This establishes Rice ***agreed*** to perform the assessment discussed in the initial consultation about it. Hence, there was an express agreement to perform the work contemplated. That the assessment never was performed does not negate that an attorney-client relationship was established.

### III. THE MATTERS ARE SUBSTANTIALLY RELATED

In brief, Rice argues even if he previously had an attorney-client relationship with SHA, his current representation of Threatt, is not "substantially related" to his prior representation of SHA (Doc.61 p.15-17). Nothing could be further from the truth, which is demonstrated beyond dispute by explicit concessions in Rice's brief coupled with numerous allegations in the Amended Complaint (Doc. 31).

5

Case 1:20-cv-00096-ACA   Document 64   Filed 11/20/20   Page 7 of 13

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

### A.     Rice's Concessions in Brief

In brief, Rice concedes "[t]he communications between Rice and Threatt as SHA's CEO" on their tour of SHA included, some specific matters, one of which was "housing segregation." (Doc 61 p.16).  As Rice's brief further concedes, "[o]n the tour" Threatt, as SHA's CEO "discussed [with Rice] the factors related to the segregated housing and how to address associated quality of life factors. [Threatt] identified a need to identify best practices that would address the segregation issues …." (Doc 61 p.16-17).

Hence, as conceded in Rice's brief, "segregated housing" was one matter Movants contend was a subject of Rice's prior representation of SHA and was a matter attorney Rice and Threatt, as SHA's CEO, specifically discussed.

### B.     Switching Sides Here, Rice Pleads Allegations Against SHA About the SAME Subject Matter: "Segregated Housing"

Apparently, Rice's "best practice" to address purported "segregated housing" at SHA was to bring this lawsuit for Threatt against SHA, in which Rice repeatedly asserts numerous allegations against SHA about purported "segregated housing" at SHA.  This matter of purported "segregated housing" is the very **same** (not merely "substantially related" to, but the **same**) matter Rice and Threatt, as SHA's CEO, addressed during their tour of SHA together.  **Given the matter is the same, it could not be more "substantially related."**

6

Case 1:20-cv-00096-ACA   Document 64   Filed 11/20/20   Page 8 of 13

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

Eight paragraphs of the Amended Complaint (Doc. 31) specifically allege and raise issues about purported "segregated housing" at SHA:

1. ¶ 71 (alleges "segregation issues");

2. ¶ 83 (alleges SHA was "identified … as a high risk for segregation");

3. ¶ 101(a) (alleges "[i]ssues with fair housing and segregation");

4. ¶ 129 (alleges "SHA was engaging in unlawful housing practices that resulted in discrimination and segregation");

5. ¶ 131 (alleges "Defendant was engaging in unlawful housing practices that resulted in discrimination and segregation");

6. ¶ 132 (again alleges, SHA was "identified…as a high risk for segregation");

7. ¶ 133 (alleges "Plaintiff and the Executive Leadership Team informed [SHA's] Board of Commissioners that they had 'reported the discrimination and segregation to the '[sic; a second open single quotation mark in the original without closure of the first] Department of Justice and Fair Housing.'"); and

8. ¶ 134 (alleges "Plaintiff provided the Board of Commissioners comprehensive details of…reports of SHA's misconduct (discrimination, … segregation)."

In addition to those explicit allegations about purported "segregated housing" at SHA, in Threatt's Amended Complaint Rice also repeatedly pled allegations about discriminatory housing at SHA. (Doc. 31 ¶¶ 43(a), 56(a)-(b),135-136).

Rice tries to get around this by arguing data reflecting or evidencing segregated housing was not confidential SHA information but was publicly available information ("was [information] within the public domain") (Doc. 31 p.16).

7

Case 1:20-cv-00096-ACA   Document 64   Filed 11/20/20   Page 9 of 13

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

That argument does not save Rice from disqualification pursuant to Rule 1.9 for two reasons. The first reason is so inescapable even Rice does not and cannot dispute it – whatever Threatt, as SHA's CEO, told Rice about "segregated housing" and "the factors related to it" at SHA during their tour of SHA was told to attorney Rice in a confidential communication, and their discussion about that while touring SHA was not part of any public record. Even Rice concedes the importance of confidentiality by quoting a committee comment to Rule 1.9: "See comments on Rule 1.9(c) 'preserving confidentiality is a question of access to information.' *Id*. Rule 1.9 cmt. n.6." (Doc. 61 p.18). Via his confidential discussion with Threatt, as SHA's CEO, about purported segregated housing at SHA, Rice gained access to SHA's confidential information about "the factors related to the [purported] segregated housing" at SHA (Doc. 61 p.16).

This leads to the second reason Rice's argument about publicly-available data does not save Rice from disqualification pursuant to Rule 1.9. Under the Eleventh Circuit's controlling decision in *Freund v. Butterworth*, 165 F.3d 839, 859–60 (11th Cir. 1999), it is "irrebuttably presume[d] that relevant **confidential** information was disclosed during the former period of representation," (emphasis added).

Tellingly, Rice's brief does not mention *Freund*, because he cannot get around it as controlling here. Under *Freund*, Rice's attempted disclaimers that he did not receive any SHA confidential information are to no avail as a matter of law, because

8

Case 1:20-cv-00096-ACA   Document 64   Filed 11/20/20   Page 10 of 13

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

his disclaimers are squarely contrary to *Freund's* irrebuttable presumption "that relevant confidential information was disclosed." *Id*.

Throwing in the proverbial "kitchen sink" with everything else he argues, Rice tries to obfuscate the obvious that segregated housing is the **same** subject matter by arguing about **other** matters Rice claims he and Threatt "did **not** discuss" (Doc. 31 at 17; emphasis added), as if that somehow detracts from the matter of purported "segregated housing" Rice concedes he and Threatt discussed. Such obfuscation makes no difference, it is nothing more than a smoke screen meant to distract the Court from the determinative issue under Rule 1.9, which is whether any matter that was the subject of the prior and current representation are substantially related. The matter of purported "segregated housing" is the same matter. That other matters "not…discussed" are not substantially related makes no difference.

## IV.    RICE'S RED HERRINGS

Further obfuscating, Rice argues several red herrings. Vaguely and without specifying how, Rice appears to claim SHA's procurement policy somehow precluded him from previously having been an attorney for SHA, but that is not correct, as will be demonstrated by evidence SHA will present at the hearing.

Rice also argues defense counsel withheld e-mails and thereby have not been candid with the Court. This too is not correct, as will also be demonstrated by evidence SHA will present at the hearing. The evidence will demonstrate Threatt

Case 1:20-cv-00096-ACA   Document 64   Filed 11/20/20   Page 11 of 13

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

destroyed his e-mails that were previously stored on SHA's office computer, laptop, notepad and/or cell phone that were assigned to Threatt to use, and that Threatt used, in his employment with SHA. Defendants cannot provide the Court with e-mails that Threatt himself "wiped" from his SHA electronic devices that Defendants cannot obtain from other sources. If Defendants had all e-mails Threatt "wiped" from SHA's electronic devices, they would have further demonstrated Rice's prior attorney-client relationship with SHA. Defendants are entitled to an inference to that effect because of Threatt's bad faith spoliation of that evidence. *See*, *e.g.*, *Alabama Aircraft Inds, Inc. v. Boeing Co.*, 319 F.R.D. 730, 743-44 (N.D. Al. 2017) (adverse inference based on spoliation of ESI evidence).[4]

---

[4] Movants might be remiss if they did not note one assertion in Mr. Rice's introduction that is disingenuous, at best. On page 2 of Rice's Brief (Doc. 61), Rice incorrectly states that prior to counsel's **October 2** e-mail, "no member of the SHA or anyone acting on its behalf had ever referred to [Rice] as an attorney for SHA." Doc. 61 at 2. That is not correct. Threatt admits he "listed several categories of persons from whom I would seek advice." Doc. 61-2. In those lists, Rice was **always** identified as SHA's "Civil Rights" attorney. *See* Docs. 56-4 p.3; 56-5 pp.3, 11; 56-6 p.3. All those lists were prior to counsel's **October 2** e-mail, squarely contradicting Rice's incorrect statement. Rice was listed along with at least four (4) other attorneys Threatt admitted he engaged as attorneys for SHA: Michael Syme, Michael Cohen, Jim Beck, and Stephanie Weems. *Id.*; Doc. 61-2 ¶10. Yet, Threatt would have this Court believe he did not engage Rice as an attorney for SHA for "civil rights" matters.

Case 1:20-cv-00096-ACA   Document 64   Filed 11/20/20   Page 12 of 13

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

Respectfully submitted this 20th day of November, 2020.

s/ *Brandi B. Frederick*

Richard W. Lewis (ASB-1812-L75R)
Brandi B. Frederick (ASB-4725-B59B)
Attorneys for SHA, Commissioners Patrick Lozito, James Adams, Matt Hubbard, and Phillip Morris

OF COUNSEL:
Austill Lewis Pipkin & Maddox, P.C.
600 Century Park South, Suite 100
Birmingham, AL 35226
(205) 870-3767 phone
(205) 870-3768 fax
r-lewis@maplaw.com
bfrederick@maplaw.com

s/ *Barry V. Frederick* (w/permission)

Barry V. Frederick (ASB-1979-C65B)
Attorney for Commissioner Alma Jean Cook

OF COUNSEL:

The Frederick Firm
5409 Trace Ridge Lane
Birmingham, AL 35244
(205) 739-0043 phone
(205) 739-0044 fax
barry@frederickfirm.net

Michael C. Threatt v. Sylacauga Housing Authority
Civil Action No.: 20-CV-00096-ACA
*Reply to Richard Rice's Response (Doc. 61) to Motion to Disqualify*

# CERTIFICATE OF SERVICE

I hereby certify that, on the 20th day of November, 2020, I served a copy of the above and foregoing on counsel for all parties by using the Court's ECF filing system that will send notification of such to all counsel of record, including:

Barry Vaughn Frederick
The Frederick Firm
5409 Trace Ridge Lane
Birmingham, AL  35244
Email Address: barry@frederickfirm.net
   Attorney For: Alma Jean Cook

C. David Stubbs
Stubbs, Sills & Frye P.C.
1724 South Quintard Avenue
Anniston, AL  36202
Email Address: david-ssf@cableone.net
   Attorney For: Jim Heigl

Roderick T. Cooks
Lee D. Winston
Winston Cooks, LLC
The Financial Center
505 20th Street North, Suite 815
Birmingham, AL  35203
Email Address:
rcooks@winstoncooks.com;
lwinston@winstoncooks.com
   Attorney For: Michael C. Threatt

Richard A. Rice
The Rice Firm, LLC
420 20th Street
Suite 2200
Birmingham, AL  35203
Email Address: rrice@rice-lawfirm.com
   Attorney For: Michael C. Threatt

s/ *Brandi B. Frederick*
OF COUNSEL